ALBERT RICHARDS *vs.* MAINE CENTRAL RAILROAD COMPANY.

Cumberland. Opinion July 6, 1926.

*An employee does not assume the risk resulting from his master's negligence, unless voluntarily assumed with knowledge of the danger.*

In the instant case the employee may have assumed the apparent danger of the rails falling down from the ordinary starting and stopping of the train, but not from sudden and unusual stopping without warning to the employees.

This court cannot adopt an arbitrary standard for the loss of a foot or other member, to which all jury verdicts must accord. The matter of damages is for the jury. The damages in this case are not so excessively large that this court is warranted in disturbing them. The amounts awarded under Workmen's Compensation Acts afford no criterion for damages in ordinary negligence cases.

On general motion for new trial by defendant. An action brought under the Federal Employer's Liability Act to recover for personal injuries sustained by plaintiff while in the employ of defendant in unloading and distributing steel rails along the road-bed from a car in a working train for replacing the old rails. After a rail had been deposited on the ground by means of a crane the train moved along the length of a rail and another rail was thus unloaded in the process of distribution. Plaintiff alleged that his injury was caused by mov-

ing the train with a sudden jerk which threw him down on the bottom of the car and a rail fell upon his leg so injuring it that amputation resulted. A verdict of $12,500 was rendered for plaintiff and defendant filed a general motion for a new trial. Motion overruled.

The case fully appears in the opinion.

*William H. Gulliver and George S. McCarty,* for plaintiff.

*Charles B. Carter,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, MORRILL, STURGIS, BASSETT, JJ.

WILSON, C. J. An action to recover damages for injuries received in unloading a car of steel rails by reason of a rail slipping or rolling down from a pile in the car against the plaintiff's leg and so injuring it as to require amputation just below the knee.

No disputed questions of law appear to be involved. The action is governed by the Federal Employer's Liability Act. The only questions in dispute are questions of fact upon which the alleged negligence of the defendant and an assumption of risk by the plaintiff are based. The car being unloaded was attached to a work train, so-called, which was hauling or pushing the car with others slowly along a track, stopping approximately at each rail length to leave a rail, which was done by means of a crane and hoister equipment transported on a separate car from the one carrying the rails. The signal for starting and stopping was being given by a brakeman of the work train from a point on top of the hoister where he could see the workmen in the rail car and be seen by the engineer, who could not see the men in the rail car; nor was the engineer informed as to the conditions in the rail car or the possible danger to the workmen therein from stopping or starting the train suddenly.

The plaintiff contends that at the time of the accident the engineer either gave his engine more steam, or kept it on longer, than was necessary to move the train one rail length, and when it had gone beyond the proper stopping point, some one called out, "Whoa, too far." The brakeman then gave the signal for a quick stop with the result the train was brought to such a sudden stop that the plaintiff and the men in the rail car were thrown down or about the rail car and a rail slid or rolled down from the pile and struck the plaintiff, causing his injury.

The defendant's contention is that there was no signal given for a quick stop; no brakes were applied, except as the air brakes were in practically continuous operation by reason of the operation of the hoister, which was operated by compressed air from the "train line," and thus automatically applying a certain degree of braking force, that no application of the brakes was made by the engineer for the stop at the time the accident occurred, and there was no more "jerk" or jar than ordinarily would or might occur in starting and stopping a train engaged in this kind of work.

The evidence is conflicting. The working crew testified to one state of facts and the train crew to another. There does not appear to be any necessarily inherent improbability in either account. It was a question for the jury to determine which account they believed. If there was no unusual stop and the rail slid or rolled down by force of gravity from a sloping pile, it was one of the hazards the plaintiff assumed when he engaged to work as one of the track crew of the defendant, or even if the rail was jarred loose by the ordinary stopping of the train; but if the jury found, as they might have done, if they believed the plaintiff's witnesses, that the men in charge of the operation of the train knowing the conditions in the rail car under which the men were working and the probable result upon a pile of rails that were one by one being loosened from a more or less compact mass with sloping sides, of a sudden and unexpected stopping of the train and failed to communicate that condition to the engineer whose duty it was to control the starting and stopping of the train, and a brakeman with the conditions in the rail car right in front of him gave a signal for a quick stop to which the engineer responded by a stop so sudden as to produce results described by the men in the rail car; then we think they might under such instruction as we must assume the Justice presiding gave as to what constitutes negligence, find the defendant negligent in this respect.

An employee does not assume the risks resulting from the master's negligence, unless voluntarily assumed with knowledge of the danger. *Rhoades* v. *Varney*, 91 Maine, 222; *Elliott* v. *Sawyer*, 107 Maine, 204. While there is much to be said in favor of the defendant's contention, we do not think the findings of the jury, especially where it is largely a question of veracity of witnesses, should be disturbed by this court.

Upon the question of damages, a jury has fixed them. It is true in similar cases, juries do not always agree upon substantially the same amount, but this court cannot fix an arbitrary standard for loss of a foot to which all jury verdicts must accord; nor do we regard the arbitrary amount fixed by Workmen's Compensation Acts as any criterion or guide. There the compensation is fixed on an entirely different basis, and regardless of whether the employer is responsible or not. We think in this case the verdict, while large, is not so excessively large that this court can say it was the result of prejudice or was arrived at without regard to the evidence and should be set aside on that account.

*Motion overruled.*